**UNITED STATES DISTRICT COURT]**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **INDEPENDENT FINANCIAL SERVICES, INC.,** **Plaintiffs,** | ) | |
| **v.** | ) | **C.A. NO. 05-275-ML** |
| **PNC BANK, N.A., f/k/a PNC BANK, F.S.B.,** **Defendant.** | ) | |

**OBJECTION OF PLAINTIFF INDEPENDENT FINANCIAL SERVICES, INC. TO DEFENDANT PNC BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Independent Financial Services, Inc. ("IFS") objects to the Motion for Summary Judgment filed by defendant PNC Bank, N.A., f/k/a PNC Bank, F.S.B. In support of its objection, IFS submits the accompanying memorandum of law and Statement of Undisputed and Disputed Facts.

Jeffrey C. Schreck (#2428)
One Providence Washington Plaza
Fifth Floor
Providence, RI 02903
TEL (401) 421-9600
FAX (401) 331-9267
Attorney for Plaintiff

## Certification

I hereby certify that I caused a copy of the within pleading to be mailed to

Mark W. Freel, Esq.
Raymond M. Ripple, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, R.I. 02903

on this 5th day of June, 2006.

**UNITED STATES DISTRICT COURT]**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **INDEPENDENT FINANCIAL SERVICES, INC., Plaintiffs,** | ) | |
| **v.** | ) | **C.A. NO. 05-275-ML** |
| **PNC BANK, N.A., f/k/a PNC BANK, F.S.B., Defendant.** | ) | |

**MEMORANDUM OF PLAINTIFF INDEPENDENT FINANCIAL SERVICES, INC. IN SUPPORT OF ITS OBJECTION TO DEFENDANT PNC BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Defendant PNC Bank, N.A., f/k/a PNC Bank, F.S.B. ("PNC") sent a letter on March 2, 2001 (the "Notice") to Independent Financial Services, Inc. ("IFS") stating that PNC was terminating the Financial Services Agreement (the "Agreement") effective April 30, 2001. The centerpiece of PNC's legal argument is that PNC breached the Agreement on the day it sent the Notice, and therefore the statute of limitations runs from that day and not the day the parties ceased to perform under the Agreement. PNC fails to cite a single case in support of its proposition that notice of contract termination is the measuring date under Pennsylvania law for the statute of limitations where the contract continues to be performed after the notice date.

In fact, the cases cited by PNC support the view that the breach occurred when PNC's contract performance ended, which was April 30, 2001 (Affidavit of Richard

Herriott, ¶6)[1], not the Notice date. If IFS is correct that the breach occurred when PNC's contract performance ended, then PNC is not entitled to summary judgment on IFS's claims of breach of contract, breach of covenant of good faith and fair dealing, and breach of the Agreement's confidentiality provisions (Counts I, II, and IV).

IFS concedes that its breach of fiduciary duty claim appears to be time-barred under Pennsylvania's two year limitations period.

II. Background Facts

As PNC correctly describes, IFS and PNC entered into an Agreement under which PNC was to provide financial products and services to independent insurance agencies that had a contractual relationship with IFS. In addition to the business relationships with insurance agencies that gave PNC indirect access to tens of thousands of customers of these agencies, IFS had a simple and comprehensive loan origination program that allowed insurance agencies to offer a wide variety of financial products and services to agency customers on a competitive basis (Complaint, ¶5). IFS called its loan origination program the *Independent Advantage*® program. The *Independent Advantage*® program allowed agencies to secure fast loan decisions and competitive loan rates without substantially increasing their business overhead (Complaint, ¶5).

Mr. Herriott met with representatives of PNC for many months before the Agreement was signed on February 27, 1998 (Herriott Affidavit, ¶2). Before IFS signed the Agreement, PNC satisfied Mr. Herriott that PNC would do everything possible to make the parties' business relationship a success (Herriott Affidavit, ¶2). IFS was and is a family business, and Mr. Herriott and his family invested substantial money and effort

---

[1] The Affidavit of Richard L. Herriott, President of IFS, is attached as Exhibit A to Plaintiff's Statement of Disputed and Undisputed Facts.

trying to make the business relationship with PNC work (Herriott Affidavit, ¶3). The relationship was not as successful as it could have been because PNC did not make the same commitment that IFS did (Herriott Affidavit, ¶3).

There were many actions that PNC took during the three year period that the parties operated under the Agreement that were inconsistent with PNC's obligations under the Agreement and were not reasonable in the context of the IFS-PNC business relationship (Herriott Affidavit, ¶4). IFS specifically identified many of PNC's inadequacies in the Complaint (Complaint ¶¶11-16). IFS did not assert in the Complaint that these failings by PNC constituted separate and independent breaches of the Agreement (Herriott Affidavit, ¶5). IFS asserts that PNC's termination of the Agreement on April 30, 2001 was a breach of contract and a breach of the covenant of good faith and fair dealing because (a) IFS had fulfilled its obligations under the Agreement, and (b) to the extent that IFS did not fulfill any of its obligations, PNC was not entitled to terminate the Agreement because of PNC's failures to perform its obligations (Herriott Affidavit, ¶5).

Although PNC sent the Notice on March 2, 2001 advising IFS that PNC would terminate the Agreement effective April 30, 2001, the sending of the letter did not change PNC's performance of its obligations under the Agreement. PNC continued to perform its obligations as it had performed them before the sending of the letter and did not cease performing its obligations under the Agreement until April 30, 2001 (Herriott Affidavit, ¶6).

On March 26, 2001, Mr. Herriott sent a letter to PNC asking that it defer the termination date to July 27, 2001 (Herriott Affidavit, ¶7). Mr. Herriott would not have

sent that letter if PNC had stopped performing its obligations under the Agreement on March 2, 2001 and the IFS-PNC relationship had ended. On March 30, 2001, PNC rejected the extension request and confirmed that the termination date would be April 30, 2001 (Herriott Affidavit, ¶7).

If PNC had not terminated the Agreement on April 30, 2001, IFS would have continued to work with PNC under the terms of the Agreement until the ten year term ended (Herriott Affidavit, ¶8). Although IFS was not completely happy with PNC's performance of its obligations and level of commitment, IFS did not consider PNC to have "breached" the Agreement until the date of termination (Herriott Affidavit, ¶8). At no time did IFS consider terminating the Agreement for non-performance by PNC; the approach that IFS took was to push PNC to do more and do better, which PNC sometimes did as a result of IFS's encouragement (Herriott Affidavit, ¶8).

## III. Legal Argument

### A. IFS Acknowledges That The Agreement Provides That Pennsylvania Law Will Apply To Disputes Between The Parties That Arise Under The Agreement

PNC correctly quotes language in the Agreement in which the parties agreed that Pennsylvania law would govern disputes under the Agreement. Moreover, inasmuch as PNC was a national bank with its principal place of business in Pennsylvania, IFS cannot dispute the fact that the Commonwealth of Pennsylvania had a significant relationship to the parties. Both IFS and PNC were represented by counsel in the negotiation and drafting of the Agreement, so IFS cannot argue that it would be unjust to apply Pennsylvania law to this case.

B. The Four Year Statute Of Limitations For Contract Actions Runs From April 30, 2001, The Date That PNC's Contract Performance Ended

PNC has correctly quoted Pennsylvania cases that state that the statute of limitations begins to run when a contract is breached. See, e.g., Romeo Sons, Inc. v. P.C. Yezbak & Son, Inc., 652 A.2d 830 (Pa. 1995). The critical issue for determining the date a limitations period has expired, therefore, is to determine when the breach occurred. Where, as here, the parties continue to perform their obligations under the contract, the breach occurs when the contractual performance ends. (see cases discussed below). In the present case, the date that contractual performance ended was April 30, 2001, the date PNC declared the Agreement to be terminated.

PNC argues that the date of the Notice is the correct date because that is when IFS knew or should have known whether PNC's decision to terminate was correct or not. Even if IFS had that knowledge, which it did not, the Notice date still is not the correct date because the Agreement continued to be performed by both parties and had not been terminated.

A case that is instructive on the issue of the date of breach is CGB Occupational Therapy, Inc. v. RHA Health Services, Inc., 357 F.3d 375 (3d Cir. 2004) ("CGB"). In CGB, the Sunrise defendants contended, among other things, that the applicable statute of limitations expired before plaintiff CGB filed its action for tortious interference with contract. According to these defendants, the accrual date for tortious interference claims begins when the tort victim receives notice of the allegedly interfering conduct. In rejecting this argument that the notice date starts the running of the statute of limitations, the Court of Appeals for the Third Circuit observed that both the Pennsylvania Supreme

Court and the Third Circuit had "repeatedly admonished" that "[a] claim under Pennsylvania law accrues at 'the occurrence of the final significant event necessary to make the claim suable.'" CGB, 357 F.3d at 384 (citing cases). In CGB, the plaintiff did not suffer "actual legal damage" until the termination of the contract. Even though the allegedly interfering acts were earlier, the tort was not consummated until the contract was terminated and performance ended. Id. "Until that time, the existing contract was in full force and effect, and any termination was revocable." Id.

The CGB Court expressly rejected the argument that PNC makes here. The Court pointed out that using the date of notice to accelerate the running of statutes of limitation amounted to the functional reversal of the "discovery rule." In other words, the fact that limitations periods may be tolled by the lack of discovery of a cause of action does not mean that limitations period are accelerated by the fact that a victim becomes aware that it will suffer harm in the future. Id. See, also, Thorpe v. Schoenbrun, 202 Pa. Super. 375, 378, 195 A.2d 870, 872 (Pa. Super. 1963) ("On a continuing contract ... the statute of limitations begins to run only from the time when the breach occurs or the contract is in some way terminated."). The harm occurs when the contract is terminated, not when notice of termination is given.

In the present case, the limitations period therefore began to run when the Agreement ended on April 30, 2001, not when PNC sent its Notice of termination. Accordingly, the contractual claims of IFS are not barred by the Commonwealth of Pennsylvania's four year limitations period.

C. The Four Year Statute Of Limitations Should Be Applied To Counts I, II and IV, IFS's Claims For Breach Of Contract, Breach Of The Covenant Of Good Faith And Fair Dealing, And Breach Of The Confidentiality Obligations Of The Agreement

Counts I, II, and IV of the Complaint all relate to PNC's performance or non-performance of its obligations under the Agreement, and these claims therefore are contractual in nature. As a result, the contractual limitations period of four years should govern each of these claims. Since the limitations period began to run on April 30, 2001 and plaintiff's Complaint was filed less than four years later, none of these claims are barred by the statute of limitations.

PNC argues that Count IV of the Complaint should be barred because IFS's claims are described as "misappropriation" and "breach of confidentiality obligation", and under Pennsylvania law claims of misappropriation of trade secrets and breach of confidentiality are subject to two year statutes of limitation. In this case, however, IFS's claims under Count IV of the Complaint arise out of PNC's breach of its promises under the Agreement. Accordingly, PNC's violations constitute breaches of contract that are subject to a four year limitations period, not the two year limitations period applicable to the tort of misappropriation of trade secrets.

PNC's motion for summary judgment as to Counts I, II and IV therefore should be denied.

Jeffrey C. Schreck (#2428)
One Providence Washington Plaza
Fifth Floor
Providence, RI 02903
TEL (401) 421-9600
FAX (401) 331-9267
Attorney for Plaintiff

Certification

I hereby certify that I caused a copy of the within pleading to be mailed to

Mark W. Freel, Esq.
Raymond M. Ripple, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, R.I. 02903

on this 5th day of June, 2006.