UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SCANNED

INDEPENDENT FINANCIAL SERVICES, INC.,

Plaintiff,

v.

PNC BANK, N.A., f/k/a PNC BANK, F.S.B.,

Defendant.

C.A. No. 05-275-ML

**REPLY MEMORANDUM IN SUPPORT OF PNC BANK, N.A.'S MOTION FOR SUMMARY JUDMGENT**

Defendant PNC Bank, N.A. ("PNC") hereby submits the following reply memorandum in support of its motion for summary judgment.

## I. Plaintiff's Contract Claims Accrued Prior to April 30, 2001.

In its attempt to avoid the obvious operation of the applicable statute of limitations in this case, Plaintiff Independent Financial Services, Inc. ("Plaintiff" or "IFS") relies on the case of CGB Therapy, Inc. v. RHA Health Services, Inc., 357 F.3d 375 (3d Cir. 2004). IFS relies on CGB for its argument that its breach of contract claims accrued on April 30, 2001, the effective date of PNC's termination of the Financial Service Agreement ("Agreement"), and not on March 2, 2001, when it was notified of PNC's termination. The CGB decision, however, is distinguishable from this case in many critical respects.

In CGB, the plaintiff, a provider of rehabilitation services to long-term care facilities, had entered into a contract with RHA/Pennsylvania ("RHA") to provide services to its nursing homes. RHA's facilities were managed by a third-party agent, Sunrise Assisted Living, Inc. ("Sunrise"). CGB's contract with RHA contained an "anti-raiding" provision, which provided

that if CGB were terminated, RHA's facilities would not seek to employ any of CGB's employees for a one-year period. CGB's contract also provided that termination could only be for cause upon ninety days advance written notification. The contract provided CGB an opportunity to correct any defects in performance during the ninety-day period. If cured before the termination date, the contract would remain in full force and effect. Id. at 380.

RHA provided CGB with notice of termination on June 30, 1998, but made the termination effective on September 30, 1998, on account of the ninety-day waiting period. Id. During that time period, and in violation of the contract's anti-raiding provision, Sunrise recruited several of CGB's employees and helped RHA enter into new agreements with other vendors. As a result, CGB sued Sunrise for tortious interference with contract (not for breach of contract). Id. at 382. The Third Circuit ultimately rejected Sunrise's argument that CGB's tortious interference claim accrued upon notice of the termination, as opposed to the effective date of termination. In reaching this holding, the court reasoned that CGB had not suffered "actual legal damage" until the termination of the contract became effective on September 30, 1998. Id. at 384 ("Until that time, the existing contract was in full force and effect, and any termination was revocable."). Accordingly, CGB could not have pursued its tort claim until the effective date.

This case, however, is very different from CGB. As an initial matter, in CGB, Sunrise was not a party to the contract and therefore could not be sued in tort until the contract was terminated. Prior to that time, the elements of a tortious interference claim under Pennsylvania law would not have existed. Moreover, the period of time between RHA's notice of termination and its effective date was mandated by the ninety-day waiting period contained in the contract.

Accordingly, up to the effective date of the termination, CGB had a contractual right to cure any alleged defects and revocation of the termination was a real possibility.

Here, unlike CGB's contract with RHA, Section 10.2(g) of the Agreement between PNC and IFS neither contains a cure provision nor mandates a waiting period prior to termination of the Agreement. Therefore, when PNC notified IFS on March 2, 2001, that it was terminating the Agreement pursuant to Section 10.2(g), there was no contractual right to cure this ground for termination.[1] Indeed, as IFS states in its opposition, it asked for a continuation of the effective date of the termination, and PNC declined prior to April 30, 2001. As a result, IFS knew prior to April 30, 2001 that its relationship with PNC under the Agreement was terminated, and knew the grounds for that termination. Moreover, unlike Sunrise, who was a not a party to the contract with CGB, and therefore could not be sued until all elements of CGB's tort claim accrued, IFS was a party to the Agreement with PNC and therefore could sue PNC <u>in contract</u> as soon as PNC provided notice of termination.

## II. <u>Even if Count IV of Plaintiff's Complaint is Governed By A Four-Year Statute of Limitations, It Still is Time-Barred.</u>

IFS also argues that its claim for misappropriation and breach of confidentiality obligations is governed by the four-year statute of limitations for breach of contract claims because the claims arise out of promises under the Agreement. However, even assuming, *arguendo*, that theses claims are governed by a four-year limitations period, they are still time-barred. Any alleged acts constituting misappropriation or a breach of confidentiality must, by definition, have occurred prior to April 30, 2001, and therefore would have occurred more than four years prior to filing the Complaint. IFS cannot arbitrarily pick April 30, 2001 for the accrual of these claims, given that any breach of these obligations would have occurred prior to

[1] In fact, other termination provisions of the Agreement did contain such cure provisions, but such a "waiting period" for termination was notably absent in section 10.2(g), upon which PNC relied.

this date. Therefore, Count IV is barred by the applicable statute of limitations, whether that period is held to be two years, or four years, under Pennsylvania law.

For the foregoing reasons, and those set forth in its principal memorandum of law, PNC's motion for summary judgment should be granted.

PNC BANK, N.A.

By its Attorneys,

[signature]

Mark W. Freel (#4003)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June 2006, I caused a true copy of the within Reply Memorandum to be delivered by regular mail, postage prepaid, to:

Jeffrey C. Schreck, Esq.
One Providence Washington Plaza, Fifth Floor
Providence, RI 02903

[signature]